UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| In Re: | ) BK No.: 09-27094 |
| | ) |
| IFC CREDIT CORPORATION | ) Chapter: 7 |
| | ) |
| | ) Honorable Jacqueline Cox |
| | ) |
| Debtor(s) | ) |
| DAVID P. LEIBOWITZ AS TRUSTEE for the | ) Adv. No.: 12-1279 |
| ESTATE OF IFC CREDIT CORPORATION | ) |
| | ) |
| Plaintiff(s) | ) |
| P.J. ACTS, LTD. | ) |
| | ) |
| | ) |
| Defendant(s) | ) |

**PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATIONS OF THE BANKRUPTCY COURT
WITH RESPECT TO ENTERING DEFAULT JUDGMENT**

This matter having come before the Court for hearing on the Motion for Default and Entry of Proposed Findings of Fact, Conclusions of Law and Recommendations of the Bankruptcy Court with Respect to entering Default Judgment, and due noticing having been given, and P.J. Acts, Ltd. having failed to answer or otherwise please after being serviced with Plaintiff's Complaint. The Motion was not contested after notice. Upon hearing and considering the arguments presented, I reach the following findings of fact, conclusions of law and recommendations for entry of judgment as follows:

I. FINDINGS OF FACT

1. On July 27, 2009 ("Petition Date"), the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code in this Court and the United States Trustee ("UST") appointed the Trustee as the interim chapter 7 trustee for the Debtor's estate. The Trustee has since become the permanent chapter 7 trustee. The name of the Defendant is P.J. Acts, Ltd. See Declaration ¶3.

2. Commencing some time prior to December 2005 and continuing through July 31, 2008, Debtor and Defendant entered into fourteen separate transactions in which Debtor agreed to sell to Defendant and Defendant agreed to purchase from Debtor certain rights to residual interests in Debtor's equipment lease agreements with third-person equipment lessees (hereinafter, collectively, "Residual Lease Transactions"). See Declaration ¶4.

3. Of the Residual Lease Transactions, four of the underlying agreements have become due and owing to the Debtor. The four underlying agreements and the Defendant's failure to comply with the terms of said agreements are described herein.

A. FIRST PROMISSORY NOTE

4. On or before December 30, 2005, Debtor and Defendant entered into an agreement whereby Debtor agreed to sell and Defendant agreed to purchase certain rights, title and interest in and to certain

residuals derived from certain specified equipment leases with third persons to which Debtor would otherwise be entitled to receive in connection with those specified equipment leases ("P.J. Acts Residual Interests Agreement No. 1"). See Declaration ¶5.

5. At or before the time of entering into P.J. Acts Residual Interests Agreement No. 1 Defendant was made aware that the equipment lease residual interests were subordinate to the rights of any lenders or lenders and that in the event of any default by any equipment lessee the leased equipment could be repossessed and sold in order to satisfy the balance which Debtor owned to any such lender or lenders who had an interest in the equipment leases. See Declaration ¶6.

6. On or about December 30, 2005, Debtor and Defendant entered into and executed certain agreements which memorialized P.J. Acts Residual Interests Agreement No. 1. These memorials included the following:

   a. Residual Interest Sales Agreement dated December 30, 2005 which was executed on behalf of the purchaser of certain equipment lease residual interests;

   b. Residual Interest Sales Supplement Agreement No. 01 dated December 30, 2005 which was executed on behalf of the purchaser of certain equipment lease residual interests;

   c. Bill of Sale dated December 30, 2005 which was executed on behalf of Debtor

   d. Chattel Mortgage Security Agreement dated December 30, 2005 which was executed on behalf of the purchaser of certain equipment lease residual interests; and

   e. Promissory Note dated December 30, 2005 which was executed on behalf of Defendant with a payment schedule (hereinafter referred to as "P.J. Acts Promissory Note No. 1").
See Declaration ¶7.

7. According to the terms of P.J. Acts Residual Interests Agreement No. 1, Debtor retained a collateral interest in certain equipment lease residuals to secure P.J. Acts Promissory Note No. 1. See Declaration ¶8.

8. In consideration for entering into P.J. Acts Residual Interests Agreement No. 1, Defendant was to receive residual interest payments based on the performance of the certain equipment leases. See Declaration ¶9.

9. Defendant directly received and/or had credited to the balance due and owing on P.J. Acts. Promissory Note No. 1 residual interest payments based on the performance of the certain equipment leases which collateralized P.J. Acts Promissory Note No. 1 and the P.J. Acts Residual Interests Agreement No. 1. See Declaration ¶10.

10. P.J. Acts Promissory Note No. 1 matured on December 25, 2010. See Declaration ¶11.

11. Defendant failed to make all payments due on P.J. Acts Promissory Note No. 1. See Declaration ¶12.

12. The terms of P.J. Acts Promissory Note No. 1 provided that "The holder hereof shall be required to look first to the collateral for the payment of this Note." See Declaration ¶13.

13. Debtor has looked to the collateral which secured P.J. Acts Promissory Note No.1 but is unable to reduce any such collateral to liquid funds to pay down or pay off P.J. Acts Promissory Note No. 1. However, even if Debtor could reduce the collateral which secured P.J. Acts Promissory Note No. 1 into liquid assets, such assets could not be used to pay down or pay off P.J. Acts Promissory Note No. 1 since one or more of Debtor's lenders has a first-in-time first-in-right priority interest in any and all residuals derived from that same collateral. See Declaration ¶14.

14. Debtor is not required to make demand on Defendant prior to initiating an action for breach of Promissory Note No. 1. See Declaration ¶15.

15. As of December 31, 2010, there remains due and owing by Defendant to Debtor the sum of One Hundred Eighty-Six Thousand Nine Hundred Twenty and Seven One-Hundredths Dollars ($186,920.07). See Declaration ¶16.

B. SECOND PROMISSORY NOTE

16. On or before May 30, 2006, Debtor and Defendant entered into an agreement whereby Debtor agreed to sell and Defendant agreed to purchase certain rights, title and interest in and to certain residuals derived from certain specified equipment leases with third persons to which Debtor would otherwise be entitled to receive in connection with those specified equipment leases ("P.J. Acts Residual Interests Agreement No. 2). See Declaration ¶17.

17. At or before the time of entering into P.J. Acts Residual Interests Agreement No. 2 Defendant was made aware that the equipment lease residual interests were subordinate to the rights of any lenders or lenders and that in the event of any default by any equipment lessee the leased equipment could be repossessed and sold in order to satisfy the balance which Debtor owned to any such lender or lenders who had an interest in the equipment leases. See Declaration ¶18.

18. On or about May 30, 2006, Debtor and Defendant entered into and executed certain agreements which memorialized P.J. Acts Residual Interests Agreement No. 2. These memorials included the following:

a. Residual Interest Sales Agreement dated May 30, 2006 which was executed on behalf of Defendant;

b. Residual Interest Sales Supplement Agreement No. 01 dated May 30, 2006 which was executed on behalf of Defendant;

c. Bill of Sale dated May 30, 2006 which was executed on behalf of Debtor;

d. Chattel Mortgage Security Agreement dated May 30, 2006 which was executed on behalf of Defendant; and

e. Promissory Note dated May 30, 2006 which was executed on behalf of Defendant with a payment schedule (hereinafter referred to as "P.J. Acts Promissory Note No. 2").
See Declaration ¶19.

19. According to the terms of P.J. Acts Residual Interests Agreement No. 2, Debtor retained a

collateral interest in certain equipment lease residuals to secure P.J. Acts Promissory Note No. 2. See Declaration ¶20.

20. In consideration for entering into P.J. Acts Residual Interests Agreement No. 2, Defendant was to receive residual interest payments based on the performance of the certain equipment leases. See Declaration ¶21.

21. Defendant directly received and/or had credited to the balance due and owing on P.J. Acts Promissory Note No. 2 residual interest payments based on the performance of the certain equipment leases which collateralized P.J. Acts Promissory Note No. 2 and the P.J. Acts Residual Interests Agreement No. 2. See Declaration ¶22.

22. P.J. Acts Promissory Note No. 2 matured on June 25, 2011. See Declaration ¶23.

23. Defendant failed to make all payments due on P.J. Acts Promissory Note No. 2. See Declaration ¶24.

24. The terms of P.J. Acts Promissory Note No. 2 provided that "The holder hereof shall be required to look first to the collateral for the payment of this Note." See Declaration ¶25.

25. Debtor has looked to the collateral which secured P.J. Acts Promissory Note No.2 but is unable to reduce any such collateral to liquid funds to pay down or pay off P.J. Acts Promissory Note No. 2. However, even if Debtor could reduce the collateral which secured P.J. Acts Promissory Note No. 2 into liquid assets, such assets could not be used to pay down or pay off P.J. Acts Promissory Note No. 2 since one or more of Debtor's lenders has a first-in-time first-in-right priority interest in any and all residuals derived from that same collateral. See Declaration ¶26.

26. Debtor is not required to make demand on Defendant prior to initiating an action for breach of Promissory Note No. 2. See Declaration ¶27.

27. As of December 31, 2010, there remains due and owing by Defendant to Debtor the sum of Three Hundred Thousand Three Hundred Eighty-Two and Thirteen One-Hundredths Dollars ($300,382.13). See Declaration ¶28.

C. THIRD PROMISSORY NOTE

28. On or about February 27, 2009, Debtor and Defendant entered into an agreement ("P.J. Acts Residual Interests Agreement No. 3") whereby Debtor agreed to sell and Defendant agreed to purchase certain rights, title and interest in and to certain residuals derived from certain specified equipment leases which existed between Debtor and third-persons. See Declaration ¶29.

29. One or more of the documents which comprise P.J. Acts Residual Interests Agreement No. 3 provides that the equipment lease residual interests were subordinate to the rights of any lender or lenders which had a prior in right interest in those equipment lease residuals and that in the event of any default by any equipment lessee the leased equipment could be repossessed and sold in order to satisfy the balance which Debtor owed to any such lender or lenders who had a security interest in the equipment leases. See Declaration ¶30.

30. On or about February 27, 2009, Debtor and Defendant entered into and executed certain

agreements which memorialized P.J. Acts Residual Interests Agreement No. 3. These memorials included the following:

    a. Residual Interest Sales Agreement dated February 27, 2009 which was executed on behalf of the purchaser of certain equipment lease residual interests;

    b. Residual Interest Sales Supplement Agreement No. 01 dated February 27, 2009 which was executed on behalf of the purchaser of certain equipment lease residual interests;

    c. Chattel Mortgage Security Agreement dated February 27, 2009 which was executed on behalf of the purchaser of certain equipment lease residual interests; and

    d. Promissory Note dated February 27, 2009 which was executed on behalf of Defendant with a payment schedule (hereinafter referred to as "Promissory Note No. 3"). See Declaration ¶31.

    31. According to the terms of P.J. Acts Residual Interests Agreement No. 3, Debtor retained a collateral interest in certain equipment lease residuals to secure Promissory Note No. 3. See Declaration ¶32.

    32. In consideration for entering into P.J. Acts Residual Interests Agreement No. 3, Defendant was to receive residual interest payments based on the performance of the certain equipment leases. See Declaration ¶33.

    33. Prior to the filing of Debtor's petition in bankruptcy, Defendant received periodic payments from Debtor from the equipment leases allocated to P.J. Acts Residual Interests Agreement No. 3. Following the filing of Debtor's petition in bankruptcy, Debtor credited to the principal obligation on Promissory Note No. 3 equipment lease residuals received by Debtor on the equipment leases allocated to P.J. Acts Residual Interests Agreement No. 3. Defendant accepted each payment it received in connection with P.J. Acts Residual Interests Agreement No. 3 prior to the filing of Debtor's petition in bankruptcy and did not object to Debtor's application of equipment lease residuals to reduce the balance of Promissory Note No. 3 following the filing of Debtor's petition in bankruptcy. See Declaration ¶34.

    34. Promissory Note No. 3 matured on April 25, 2012. See Declaration ¶35.

    35. Defendant has failed to make all payments due on Promissory Note No. 3. See Declaration ¶36.

    36. The terms of Promissory Note No. 3 provided that "The holder hereof shall be required to look first to the collateral for the payment of this Note." See Declaration ¶37.

    37. Debtor has looked to the collateral which secured Promissory Note No. 3 but is unable to reduce any such collateral to liquid funds to pay down or pay off Promissory Note No. 3. However, even if Debtor could reduce the collateral which secured Promissory Note No. 3 into liquid assets, such assets could not be used to pay down or pay off Promissory Note No. 3 since one or more of Debtor's lenders has a first-in-time first-in-right priority interest in any and all residuals derived from that same collateral as described in one or more of the documents which comprise P.J. Acts Residual Interests Agreement No. 3. See Declaration ¶38.

    38. Debtor is not required to make demand on Defendant prior to initiating an action for breach of Promissory Note No. 3. See Declaration ¶39.

39. As of the filing of the Adversary Complaint, there remains due and owing by Defendant to Debtor the sum of Five Hundred Twenty-Two Thousand Four Hundred Thirty- Three and Eleven One-Hundredths Dollars ($522,433.11) pursuant to Promissory Note No. 3. See Declaration ¶40.

### D. FOURTH PROMISSORY NOTE

40. On or about June 29, 2007 Debtor and Defendant entered into an agreement ("P.J. Acts Residual Interests Agreement No. 4") whereby Debtor agreed to sell and Defendant agreed to purchase certain rights, title and interest in and to certain residuals derived from certain specified equipment leases which existed between Debtor and third-persons. See Declaration ¶41.

41. One or more of the documents which comprise P.J. Acts Residual Interests Agreement No. 4 provides that the equipment lease residual interests were subordinate to the rights of any lender or lenders which had a prior in right interest in those equipment lease residuals and that in the event of any default by any equipment lessee the leased equipment could be repossessed and sold in order to satisfy the balance which Debtor owed to any such lender or lenders who had a security interest in the equipment leases. See Declaration ¶42.

42. On or about June 29, 2007, Debtor and Defendant entered into and executed certain agreements which memorialized P.J. Acts Residual Interests Agreement No. 4. These memorials included the following:

   a. Residual Interest Sales Agreement dated June 29, 2007 which was executed on behalf of the purchaser of certain equipment lease residual interests;

   b. Residual Interest Sales Supplement Agreement No. 01 dated June 29, 2007 which was executed on behalf of the purchaser of certain equipment lease residual interests;

   c. Bill of Sale dated June 29, 2007 which was executed on behalf of Debtor;

   d. Chattel Mortgage Security Agreement dated June 29, 2007 which was executed on behalf of the purchaser of certain equipment lease residual interests; and

   e. Promissory Note dated June 29, 2007 which was executed on behalf of Defendant with a payment schedule (hereinafter referred to as "Promissory Note No. 4"). See Declaration ¶43.

43. According to the terms of P.J. Acts Residual Interests Agreement No. 4, Debtor retained a collateral interest in certain equipment lease residuals to secure Promissory Note No. 4. See Declaration ¶44.

44. In consideration for entering into P.J. Acts Residual Interests Agreement No. 4, Defendant was to receive residual interest payments based on the performance of the certain equipment leases. See Declaration ¶45.

45. Prior to the filing of Debtor's petition in bankruptcy, Defendant received periodic payments from Debtor from the equipment leases allocated to P.J. Acts Residual Interests Agreement No. 4. Following the filing of Debtor's petition in bankruptcy, Debtor credited to the principal obligation on Promissory Note No. 4 equipment lease residuals received by Debtor on the equipment leases allocated to P.J. Acts

Residual Interests Agreement No. 4. Defendant accepted each payment it received in connection with P.J. Acts Residual Interests Agreement No. 4 prior to the filing of Debtor's petition in bankruptcy and did not object to Debtor's application of equipment lease residuals to reduce the balance of Promissory Note No. 4 following the filing of Debtor's petition in bankruptcy. See Declaration ¶46.

46. Promissory Note No. 4 matured on July 25, 2012. See Declaration ¶47.

47. Defendant has failed to make all payments due on Promissory Note No. 4. See Declaration ¶48.

48. The terms of Promissory Note No. 4 provided that "The holder hereof shall be required to look first to the collateral for the payment of this Note." See Declaration ¶49.

49. Debtor has looked to the collateral which secured Promissory Note No. 4 but is unable to reduce any such collateral to liquid funds to pay down or pay off Promissory Note No. 4. However, even if Debtor could reduce the collateral which secured Promissory Note No. 4 into liquid assets, such assets could not be used to pay down or pay off Promissory Note No. 4 since one or more of Debtor's lenders has a first-in-time first-in-right priority interest in any and all residuals derived from that same collateral as described in one or more of the documents which comprise P.J. Acts Residual Interests Agreement No. 4. See Declaration ¶50.

50. Debtor is not required to make demand on Defendant prior to initiating an action for breach of Promissory Note No. 4. See Declaration ¶51.

51. As of the filing of this Adversary Complaint, there remains due and owing by Defendant to Debtor on Promissory Note No. 4 the sum of Ninety-Nine Thousand Five Hundred Thirty-Four and Sixty-Five One-Hundredths Dollars ($99,534.65). See Declaration ¶52.

E. PROCEDURAL BACKGROUND

52. On August 17, 2012, the above-captioned action was filed against P.J. Acts, Ltd. See Declaration ¶53.

53. A summons was duly issued, and together with a copy of the Complaint, was served upon the Defendant by first class mail postage prepaid. See Declaration ¶54.

54. Defendant has failed to answer or otherwise plead or otherwise appear in this proceeding. See Declaration ¶56.

II. CONCLUSIONS OF LAW

55. The Plaintiff has duly served the summons and complaint on the Defendant pursuant to Federal Rule of Bankruptcy Procedure 7004(b).

56. Pursuant to Rule 7055, the Plaintiff has properly submitted a sworn statement that verifies: (a) the Defendant was properly served with the Complaint and Summons; (b) the Defendant has not answered, defended, or responded to the Complaint; and (c) the time for response has expired.

57. Based on the Plaintiff's proper service of the Complaint, the Defendant's failure to appear, answer or otherwise respond to the Complaint, and the Plaintiff's compliance with the requirements of

Rule 7055, the Plaintiff's factual allegations in the Complaint are deemed admitted by the Defendant as true. See Fed.R.Civ.P. 8(b); Fed. R. Bankr. P. 7008.

58. Here, the allegations in the Complaint are sufficient pled to prove a prima facie case and to support the relief the Complaint seeks – (a) entry of a judgment against the Defendant for breach of contract on the Promissory Note No. 1 in the amount of $186,920.07; (b) entry of a judgment against the Defendant for breach of contract on Promissory Note No. 2 in the amount of $300,382.13; (c) entry of a judgment against the Defendant for breach of contract on Promissory Note No. 3 in the amount of $522,433.11; and (d) entry of a judgment against the Defendant for breach of contract on Promissory Note No. 4 in the amount of $99,534.65.

III. RECOMMENDATIONS

59. It is hereby recommended that the United States District Court for the Northern District of Illinois enter final default judgment in the amount of $1,109,269.96 in favor of Plaintiff and against Defendant.

Enter:

*Jacqueline P. Cox*
J. Cox

United States Bankruptcy Judge

Dated: NOV - 1 2012

**Prepared by:**

David P. Leibowitz (ARDC # 1612271)
Jonathan T. Brand (ARDC# 6294885)
Lakelaw
420 W. Clayton Street
Waukegan, Illinois 60085-4216
Telephone: (847) 249-9100
Facsimile: (847) 249-9180

Rev: 20120501_apo